**SHU XING JIANG, Petitioner,**

v.

**BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES, Respondent.**

No. 05–3214–ag.

United States Court of Appeals, Second Circuit.

Nov. 2, 2006.

Lorance Hockert, New York, New York, for Petitioner.

Thomas M. Daly, Assistant United States Attorney (Edward E. McNally, United States Attorney for the Southern District of Illinois, on the brief), Fairview Heights, Illinois, for Respondent.

PRESENT: Hon. AMALYA L. KEARSE, Hon. SONIA SOTOMAYOR, Hon. ROBERT A. KATZMANN, Circuit Judges.

## SUMMARY ORDER

Shu Xing Jiang, a citizen of the People's Republic of China, petitions for review of the June 3, 2005, BIA decision affirming the June 30, 2004, decision of Immigration Judge ("IJ") Gabriel C. Videla denying his applications for asylum, withholding of removal and relief under the Convention Against Torture ("CAT").[1] *In re Shu Xing Jiang,* No. A 77 322 357 (B.I.A. June 3, 2005), *aff'g* No. A 77 322 357 (Immig. Ct. N.Y. City June 30, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the BIA summarily affirms the decision of the IJ without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. *See, e.g., Twum v. I.N.S.,* 411 F.3d 54, 58 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard. *Ramsameachire v. Ashcroft,* 357 F.3d 169, 177–78 (2d Cir.2004); *see also* 8 U.S.C. § 1252(b)(4)(B). Because the IJ's adverse credibility finding in this matter either is based on a clear misunderstanding of the record or raises significant questions regarding the reasoning behind the determination, we grant the petition and vacate the BIA's order except to the extent that it denied relief under the CAT.

First, the IJ found Jiang not credible because, when asked whether he suffered any additional problems under China's birth control policies beyond the forced insertion of an IUD into his wife following the birth of their first child, Jiang stated after a long pause that he had suffered no further harm. The IJ found that this testimony contradicted petition-

---

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85.

er's later testimony in which he claimed his wife had been forcibly sterilized. The IJ's finding is, however, clear error. Jiang's statement that he had no problems with the authorities beyond the IUD insertion was in response to his attorney's questions concerning what specifically took place after the birth of Jiang's *first* child. Indeed, immediately thereafter, Jiang was asked about problems that he and his wife encountered after the birth of their second child. He then responded that his wife was forcibly sterilized. Therefore, the IJ's mention of a long pause before Jiang answered the earlier question does not persuade us to accept the negative credibility assessment, given that Jiang's answer was entirely responsive to the question that had been asked, and did not go beyond that question, and that his later statement as to his wife's forced sterilization was in response to a different—and nonleading— question.

■ Second, the IJ found that Jiang's household registry document, which listed him as a farmer with a high school education, contradicted his testimony in which he claimed that he was a teacher with a university degree, and, as a result, greatly undermined his "story as to how events happened." Although we cannot conclude that "any reasonable adjudicator would be compelled," 8 U.S.C. § 1252(b)(4)(B), to accept Jiang's explanations as to why his household registry booklet failed to support his testimony that he had been a teacher, we cannot conclude that the IJ would not have granted Jiang's applications for asylum and withholding of removal if he had not misinterpreted Jiang's testimony with regard to his wife's sterilization, given the IJ's specific acknowledgment that the documentary "issues do not go directly to the respondent's claim for asylum because if his wife was in fact involuntarily sterilized, it is irrelevant whether the respondent was a teacher or a farmer." As the IJ stated, "the critical

issue here is whether the respondent has credibly established that his wife underwent an involuntary sterilization in China. If the respondent is able to do so, then he would establish that he has been the victim of past persecution."

■ The IJ also had "very serious doubts regarding the authenticity" of (1) a school assignment certificate submitted by Jiang to show that he had been a teacher as well as (2) a notarial birth certificate. The documents were allegedly issued some thirteen years apart (the school assignment certificate in 1987 and the notarial birth document in 2000); the IJ noted that the photographs attached to these documents appeared to be identical. Yet Jiang testified that the notarial birth document photo had been taken in 1999, and a subsequent forensic laboratory report stated that the two photos were probably taken at the same time. The IJ also found that the 1987 school assignment certificate was in an implausibly "pristine" condition and that it lacked a specific issuance date. Jiang did not testify, however—and the IJ did not ask him—why the school assignment certificate was "pristine," or where or how he kept it, or when and how he used it in practice. Further, the IJ did not cite any evidence as to Chinese documentation and record-keeping practices to show that the absence of a specific issuance date on the certificate cast substantial doubt on the certificate's authenticity; nor did the IJ indicate that he had expert knowledge of such practices. *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 405 (2d Cir.2005) ("[A]bsent record evidence of practices in foreign countries, the IJ must not speculate as to the existence or nature of such practices."). In discrediting the 1987 school assignment certificate, the IJ did not indicate to what extent he relied on the apparent identity of the photos and Jiang's initial testimony as to the 1999

photographing, on the certificate's lack of a complete date, or on the pristine condition of the certificate itself. Moreover, the IJ gave no explanation for discrediting the notarial birth document. Given all of the above, the IJ may therefore have engaged in impermissible speculation that the documents were fraudulent and, on remand, we expect the agency will better explain its reasoning concerning its finding that the documents were fraudulent.

In light of the clear error regarding Jiang's testimony and the potential flaws with the IJ's conclusions on the two allegedly fraudulent documents, we remand for further proceedings. *See id.* at 395 (noting that we must "remand where identified errors leave us in doubt whether the IJ would have reached the same result absent the errors"). Because Jiang did not raise his CAT claim before the BIA, and he does not raise it here, the claim is both unexhausted and waived. *See* 8 U.S.C. § 1252(d)(1); *Yueqing Zhang v. Gonzales,* 426 F.3d 540, 541 n. 1 (2d Cir.2005).

For the foregoing reasons, we GRANT the petition in part and DENY it in part, VACATE the BIA's decision, and REMAND to the BIA for further proceedings consistent with this decision. The pending motion for a stay of removal in this petition is DENIED as moot.